This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**GABRIEL BECERRA,**

Plaintiff-Appellant,

v.                                                    **NO. 33,758**

**ALLSTATE INSURANCE COMPANY;**
**THE DUNSIRN AGENCY; LEE DUNSIRN;**
**JENNIE BURRILL; CATHY LANKFORD;**
**STIFF, KEITH & GARCIA, LLC; ANN L.**
**KEITH, ESQ.; RUGGE, ROSALES & ASSOCIATES**
**P.C.; DALE R. RUGGE, ESQ.; SIMONE, ROBERTS,**
**& WEISS, P.A.; STEPHEN M. SIMONE, ESQ.;**
**DAVID W. FRIZZELL, ESQ.; MARIO SALAZAR;**
**AND NARCISO GARCIA JR., ESQ.**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Nan G. Nash, District Judge**

Gabriel Becerra
Albuquerque, NM

Pro Se Appellant

Jennie Burrill
Phoenix, AZ

Pro Se Appellee

Mario Salazar
Albuquerque, NM

Pro Se Appellee
Stiff, Keith & Garcia, LLC
Ann L. Keith
Albuquerque, NM

for Appellee Ann L. Keith

Simone, Roberts & Weiss, PA
Stephen M. Simone
Albuquerque, NM

for Appellees Stephen M. Simon & Allstate Insurance Company

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1}      Plaintiff appeals from a judgment entered in his favor following a bench trial. We proposed to affirm, and Plaintiff has filed a motion to amend the docketing statement as well as a memorandum in opposition to the proposed affirmance. The motion to amend raises no new issues, but instead presents additional facts and argument in support of the issues discussed in the memorandum in opposition. We therefore construe the motion to amend as a supplement to the memorandum in opposition. Having carefully considered the information and arguments presented in Plaintiff's pleadings, we are not persuaded that Plaintiff has demonstrated reversible error. We therefore affirm, for the reasons discussed below as well as those set out in

the notice of proposed disposition.

{2} Plaintiff continues to argue that Allstate violated its duty to defend him against the frivolous lawsuit filed against him by Mario Salazar. As we pointed out in the notice of proposed disposition, the district court agreed with Plaintiff; therefore, Plaintiff prevailed on this issue and all of his arguments concerning Allstate's duty to defend are unnecessary.

{3} We also pointed out in the notice that the district court awarded damages to Plaintiff as recompense for Allstate's breach, and suggested that Plaintiff had failed to show how that damages award was insufficient. Plaintiff has now attempted to detail his damages by claiming that he suffered grave emotional distress as a result of Allstate's initial failure to defend him against the Salazar lawsuit. [Amended DS 16] He states that he gained 60 pounds, suffers constant pain as a result of "unending" stress, and has suffered humiliation, embarrassment, loss of enjoyment of life, and other damages. [*Id.*] In essence, Plaintiff asks this Court to re-weigh the evidence presented to the trial court and determine that the trial court's award of over $17,000 in damages was legally insufficient. This we may not do. On appeal, an award of damages will not be reversed unless it was a result of passion, prejudice, or a palpable error, or where the measure of damages used was erroneous. *Hicks v. Eller,* 2012-NMCA-061, ¶ 35, 280 P.3d 304. In this case, the trial court found that Plaintiff

presented little concrete evidence of damages, and most of the damages claimed by Plaintiff on appeal are based on his subjective claims of emotional distress rather than on concrete demonstrations of harm such as medical bills. Given the subjective nature of his damages, we are not in a position to substitute our judgment for that of the district court, who was present at trial, observed Plaintiff's testimony, and determined the extent to which Plaintiff had been harmed by Allstate's actions. *See Shadoan v. Cities of Gold Casino*, 2010-NMCA-002*, ¶ 18, 147 N.M. 444, 224 P.3d 671 (pointing out that appellate courts are not in a position to evaluate the value of a plaintiff's pain and suffering, and may not speculate as to what the amounts might have been).

{4}     Plaintiff reiterates his argument that Allstate should not have been allowed to settle the Salazar lawsuit by paying Salazar $7500, because the lawsuit was frivolous and factually baseless. As part of this argument Plaintiff contends he had a "legal right" to prevent any payment to Salazar unless Salazar could prove that Plaintiff was liable for Salazar's injuries; he also claims Allstate could not enter into settlement negotiations with Salazar without first obtaining written consent from Plaintiff. [Amended DS 11] Plaintiff cites no legal authority for either proposition, and as we discussed in the notice of proposed disposition we do not believe either proposition is a correct statement of the law. In the notice we discussed the concept of a claim for "wrongful settlement" of a claim by an insurer, and we pointed out that such a claim

has been allowed in only limited circumstances, where it has been allowed at all. Even assuming New Mexico would adopt a cause of action for wrongful settlement, those limited circumstances are not present in this case-- the settlement with Salazar did not cost Plaintiff any money, as Allstate paid the entire $7500, and Plaintiff has not shown that the settlement otherwise caused him to suffer any legally-cognizable harm. We therefore reject Plaintiff's contention that he is entitled to some type of recovery arising from Allstate's settlement of the Salazar lawsuit, for the reasons stated in the notice of proposed disposition as well as this opinion.

{5}     Plaintiff also continues to argue that the Allstate attorney appointed to represent him in the Salazar lawsuit had a conflict of interest and conspired with Allstate to violate Plaintiff's rights, and that he should have been allowed to have a different attorney represent him. [Amended DS 12-15] These arguments are premised on Plaintiff's belief that he should have been allowed to prevent any payment of money to Salazar in settlement of the Salazar lawsuit; as we have discussed above, that belief does not comport with the law. The bottom line is that the Allstate-appointed attorney represented Plaintiff in such a fashion that Plaintiff incurred no liability to Salazar and was not required to expend any of his own funds to pay for the settlement. He therefore cannot show that he suffered any compensable damage as a result of his representation by the attorney chosen by Allstate. Put simply, Plaintiff's

5

outrage at the fact that Salazar was paid $7500 by Allstate, for what Plaintiff considers to be a frivolous claim, does not give rise to any legally-recognized cause of action against either Allstate or the attorney hired by Allstate to represent Plaintiff.

{6}     Plaintiff raises two new arguments concerning the settlement. He contends that the settlement included language indicating that neither party admitted liability for the alleged incident that led to the settlement, and that this language somehow aided Allstate in the duty-to-defend litigation between Allstate and Plaintiff. [Amended DS 13] He also argues that the settlement concealed Allstate's wrongdoing in its handling of the defense of Salazar's claim against Plaintiff. [*Id.* 13-14] Plaintiff does not explain either of these arguments further, and cites no specific facts or law in support of either one. We are unable to perceive how the non-admission-of-liability language had any impact on the litigation between Allstate and Plaintiff, and in any event Plaintiff prevailed in that litigation and therefore suffered no harm from the language. Furthermore, we do not see how the settlement could conceal any wrongdoing by Allstate in handling the defense of Salazar's claim against Plaintiff, and we point out once again that even if such wrongdoing occurred, the end result of Allstate's representation of Plaintiff was that Plaintiff owed Salazar no money or compensation of any kind. Plaintiff simply has failed to demonstrate that he was harmed in any legally-recognized manner by the settlement Allstate entered into with Salazar. In

sum, even if New Mexico were to recognize a claim for wrongful settlement by an insurance company, an issue we need not decide, Plaintiff has failed to satisfy the requirements of such a claim by failing to demonstrate that he suffered compensable harm as a result of the settlement.

{7} Plaintiff contends that his discovery was impermissibly limited by the special master appointed by the district court. The special master refused to allow Plaintiff to conduct any discovery concerning matters arising after the date on which the litigation between Allstate and Plaintiff was initiated. [RP Vol. 10, 4041] Given the status of the litigation at the time this matter was before the special master, her decision, which was affirmed by the district court, was correct. Under the amended complaint that Plaintiff was allowed to file against Allstate, his claims were limited to Allstate's alleged breaches of contract for failing to investigate and defend Plaintiff against the lawsuit filed by Salazar. [RP Vol. 9, 3856-60] However, by the time the litigation between Plaintiff and Allstate was initiated, Allstate was already providing a defense to the lawsuit under a reservation of rights. [RP Vol. 1, 369, 376, the allegation in Allstate's complaint in intervention, admitted in Plaintiff's answer and counterclaim] Plaintiff's requested discovery concerning events occurring after that date was aimed at showing that Allstate wrongfully settled the Salazar lawsuit; however, such a claim was not raised in the amended complaint that Plaintiff was

7

allowed to file, and as we have discussed was not a viable claim in any event. Therefore, Plaintiff was allowed discovery tailored specifically to the amended complaint he was allowed to file. We hold that he has not demonstrated reversible error in the district court's discovery ruling. *See Doe v. Roman Catholic Diocese of Boise, Inc.*, 1996-NMCA-057, ¶ 21, 121 N.M. 738, 918 P.2d 17 (stating that the party challenging a limitation on discovery must show an abuse of discretion and prejudice).

{8}    Plaintiff's final arguments concern the district court's refusal to allow him to amend his complaint to include a malicious-abuse-of-process claim against Narciso Garcia, Mr. Salazar's attorney. The district court refused to do so for two reasons: first, Plaintiff's failure to obtain an expert who could testify that Mr. Garcia's conduct during the litigation was unreasonable; and second, the court's determination that Plaintiff could not satisfy the elements of a claim for malicious abuse of process. As we discussed in the notice, this case is somewhat unusual because the motion to amend was not submitted or decided simply on the pleadings; instead, both parties submitted evidentiary material for the district court's consideration. We therefore proposed to treat the motion to amend in the same manner as a case in which matters outside the four corners of the complaint are considered in deciding a motion to dismiss – that is, to decide the issue under a summary-judgment standard rather than the normal

standard that is applied when we review only the allegations of the complaint. *See Tunis v. Country Club Estates Homeowners Ass'n, Inc.*, 2014-NMCA-025, ¶ 17, 318 P.3d 713. Plaintiff has not objected to our proposal, and we therefore continue to apply that standard of review.

{9} In our notice we pointed out that at the time the Salazar lawsuit was filed, Mr. Garcia was in possession of information indicating that Plaintiff allegedly aided, abetted, and encouraged the individual who allegedly battered Salazar. That information was presented to the district court. [RP Vol. 5, 2052-55] Thus, it appears that Mr. Garcia had probable cause to believe Plaintiff was potentially liable for Salazar's injuries. This is especially true, given the fact that in malicious-abuse-of-process cases there must be a "manifest" lack of probable cause in order to protect litigants' right of access to the courts. *LensCrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 29, 282 P.3d 758 .

{10} In response to our notice Plaintiff does not discuss the probable-cause issue as it pertains to the initial filing of the complaint. Instead, he contends that Mr. Garcia wrongfully prolonged the litigation without probable cause to do so, by attempting to file an amended complaint rather than dismissing the lawsuit. [Amended DS 20-21] There are at least two problems with Plaintiff's argument. First, at the time Mr. Garcia requested permission to amend the complaint, the facts surrounding the Salazar

incident were still disputed. Although no witness had identified Plaintiff as the individual who allegedly struck Salazar, responses to interrogatories had been filed indicating that Plaintiff was identified as the driver of the vehicle that approached Salazar and in which the alleged assailant was seated; that Plaintiff exited the vehicle and urged his companion to attack Salazar; and that Plaintiff drove the vehicle away from the scene. [RP Vol. 5, 2057] We understand that Plaintiff claims these alleged facts are complete fabrications; however, Plaintiff has cited no authority indicating that a dispute concerning the factual background of an incident means that probable cause is lacking for a particular version of the events, and we do not believe such authority exists. *See, e.g., LensCrafters*, 2012-NMSC-020, ¶ 31 (holding that to establish lack of probable cause, a party must show that the opposing party lacked a reasonable belief in the factual allegations or the law applicable to those facts). Furthermore, Plaintiff has not argued or cited authority for the proposition that the evidence outlined above could not as a matter of law give rise to a claim for damages against him. *See id.* It therefore appears, based on the record before us, that Mr. Garcia had probable cause to believe that the filing of an amended complaint was proper.

{11}     The other problem with Plaintiff's argument is that the issue of the filing of the amended complaint arose shortly before Allstate settled with Salazar, thereby preventing Plaintiff from having any possible liability to Salazar. [RP Vol. 2, 723,

10

January 14, 2011 motion to file amended complaint; amended DS 12, settlement conference held January 28; RP Vol. 2, 782, stipulation of dismissal filed March 9] There is nothing in the record to indicate that Plaintiff suffered any damage during the brief time period from the attempt to file the amended complaint to the settlement. Such a showing of damages is one of the elements of the malicious-abuse-of-process cause of action. *See LensCrafters*, 2012-NMSC-020, ¶ 30. Therefore, the district court did not err in finding that Plaintiff could not establish all of the elements of the claim he sought to bring against Mr. Garcia, and did not err in denying Plaintiff's motion to amend to add Mr. Garcia as a party.

{12}    Based on the foregoing, we affirm the district court's judgment in this case.

{13}    **IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**RODERICK T. KENNEDY, Judge**